Donald S. **GUZEWICZ** et al.

v.

A. E. **SLAYTON, Jr.,** Superintendent of the Virginia State Penitentiary.

Civ. A. No. 73–377–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Nov. 15, 1973.

John K. Zwerling, Alexandria, Va., for plaintiffs.

James E. Kulp, Asst. Atty. Gen., Commonwealth of Va., Richmond, Va., for defendant.

### MEMORANDUM

MERHIGE, District Judge.

Donald and Theodore Guzewicz, Virginia prisoners, seek habeas corpus relief from their conviction before the Circuit Court of the City of Fredericksburg on December 18, 1970, for possession of narcotics. Jurisdiction is attained pursuant to 28 U.S.C. § 2254. The parties are presently before the Court pursuant to respondent's motion to dismiss and petitioners' response thereto. Since matter beyond the pleadings has been submitted to the Court, this motion shall be treated as a motion for summary judgment. F.R.Civ.P., Rule 12(b). Upon the materials before it, the Court deems the matter ripe for disposition.

Petitioners allege that evidence seized pursuant to a search warrant and used against them at their trial was obtained in violation of the guarantees of the Fourth Amendment to the United States Constitution. Specifically, they allege that the affidavits used to support the search warrant provided insufficient evidence to supply probable cause to believe that the material sought was *at the time the warrant issued* in petitioners' apartment.

At the commencement of their trial, petitioners moved to suppress the evidence obtained in the search on the grounds that the three affidavits supporting the warrant were insufficient to establish probable cause. Their motion was overruled by the trial court. Objection to the affidavit was renewed on appeal to the Supreme Court of Virginia. In Guzewicz v. Commonwealth, 212 Va. 730, 187 S.E.2d 144 (1972), that court found the first two affidavits in their entirety internally insufficient to establish probable cause and unavailable as support for the third affidavit. Much of the third affidavit as well was found to be of no probative value. What remained of the third warrant was as follows:

> . . . an information [sic], who has been known and whose family has been known by this affiant for many years, and is known by this affiant to be reliable, informed this affiant that persons known by her to frequent the premises to be searched have stated in her presence that they frequent said premises for the purpose of securing and using controlled drugs which are there unlawfully possessed and distributed . . .

The Virginia Supreme Court found this segment of the third affidavit sufficient to support the warrant and uphold the conviction.

■ Petitioners allege and respondent denies that a specific objection to the absence of sufficient indication of the timeliness of the information supporting the affidavit was made at trial. Petitioners allege and respondent denies that the same allegation was preserved and specifically made on appeal. If respondent were correct on either ground, the Supreme Court of Virginia would be barred by its own rules from hearing the claim. See Rules of the Supreme

Court of Virginia, Rule 5:7. In a footnote which leaves its basis ambiguous, the Supreme Court of Virginia did in fact refuse to pass on the claim:

As no objection has been made to the omission from the affidavits of any information as to when the unlawful acts reported therein had occurred we find it unnecessary to consider the effect of this omission. 187 S.E.2d at 146, n. 1.

Although there is some evidence in this record supporting petitioners' contentions, the Court will assume arguendo that the state court agreed with the respondent on both points. Such a state court ruling finding defaults in matters of state procedure is of course binding on this Court on the issue of whether the defaults occurred.

Petitioners then brought a habeas action in this court which was dismissed without prejudice because of failure to exhaust state remedies. Guzewicz v. Slayton, C.A. 60-73-R (Mar. 22, 1973). An original habeas petition on the timeliness of the information was then instituted in the Virginia Supreme Court and dismissed on that issue without explanation. Guzewicz v. Superintendent, Record No. 730230, July 19, 1973. State remedies are therefore now exhausted.

Respondent argues that the Guzewiczes are precluded from raising the present allegation in this Court because of their failure to respect state procedural requirements calling for this issue to be raised in the state criminal prosecution. See Rules of the Supreme Court of Virginia, Rule 5:7. The argument is not one of exhaustion, which the respondent concedes, but one based on waiver, analogous, it is said, to the United States Supreme Court's ruling in Davis v. United States, 411 U.S. 233, 93 U.S. 1577, 36 L.Ed.2d 216 (1973). In Davis, petitioner brought an action seeking release pursuant to 28 U.S.C. § 2255 three years after his conviction in a federal court alleging unconstitutional discrimination in the composition of the grand jury that indicted him. This con-

tention had not been raised previously. The Supreme Court held that the waiver standard set forth in F.R.Crim.P. Rule 12(b)(2) governed an untimely claim of grand jury discrimination not only during the criminal proceedings but also later on collateral review. Respondent now argues that the same preclusive effect should be given to state criminal procedural rules calling for waiver upon failure to raise issues, including federal constitutional issues, at trial. This Court disagrees.

While *Davis* constitutes a significant delineation of the scope of relief available to federal prisoners under 28 U.S.C. § 2255, it made no pretense of overruling Fay v. Noia, 372 U.S. 391, 83 S. Ct. 822, 9 L.Ed.2d 837 (1963), which remains the beacon for federal courts dealing with state prisoner habeas petitions. The response of *Fay* to respondent's argument is clear.

Congress in 1867 sought to provide a federal forum for state prisoners having constitutional defenses by extending the habeas corpus powers of the federal courts to their constitutional maximum. Obedient to this purpose, we have consistently held that federal court jurisdiction is conferred by the allegation of an unconstitutional restraint and is not defeated by anything that may occur in the state court proceedings. State procedural rules plainly must yield to this overriding federal policy. 372 U.S. at 426–427, 83 S.Ct. at 842.

After *Fay*,

State procedural rules which define how federal constitutional issues should be litigated in state criminal courts [are], for purposes of [federal] habeas review, conclusively deemed to be "inadequate" . . .

to preclude inquiry. Hart and Wechsler, The Federal Courts and the Federal System, (2d Ed. 1973) 1487. In such a case, while the state interest in orderly criminal procedure is substantial, the paramount interest, and the only relevant substantive interest, is federal.

See Fay v. Noia, *supra,* at 431–432, 83 S.Ct. 822.[1]

A doctrine of waiver based on state procedural default does exist under *Fay,* but there the standard is the strict "deliberate bypass" test. See *Fay, supra;* Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Hunt v. Warden, 335 F.2d 936 (4th Cir. 1964). The Court does not feel that this threshold was met in this case. A myriad of attacks were in fact made on the affidavits in question, many of which were found to be meritorious. Whether petitioner did not realize that the specific timeliness issue was relevant or through simple carelessness neglected to raise it, or, as he now argues, he thought he had raised the issue, *Fay* will not allow preclusion of federal habeas relief. The respondent has offered no showing upon which this Court can conclude that the petitioners made the knowing and considered waiver of this issue presently required by federal law before federal collateral relief will be barred. Nothing less is sufficient. See McNeil v. North Carolina, 368 F.2d 313 (4th Cir. 1966).

Davis did not upset this federal-state balance. Rather it represented a resolution of a problem solely within the federal sphere. Congress has control over federal court jurisdiction and procedure. *Cf.* Ex parte Bollman, 4 Cranch 75 (1807). It can constitutionally limit the raising of constitutional defects in grand jury selection to the pre-trial period, see United States v. Gale, 109 U.S. 65, 27 L.Ed. 857 (1883); Shotwell Mfg. Co. v. United States, 371 U.S. 341, 83 S. Ct. 448, 9 L.Ed.2d 357 (1963), and it has done so in Rule 12(b)(2). The only issue in *Davis* was of the scope of congressional intent.

We think it inconceivable that Congress, having in the criminal proceeding foreclosed the raising of a claim such as this after the commencement of trial in the absence of a showing of "cause" for relief from waiver, nonetheless intended to perversely negate the Rule's purpose by permitting an entirely different but much more liberal requirement of waiver in federal habeas proceedings. *Davis, supra,* 93 S.Ct. at 1582.

Thus the reasoning of Davis does not extend to a state rule which would bar a later raising of an unconstitutional search.[2]

Respondent argues, however, that Fourth Amendment claims are different from other constitutional claims presented on habeas corpus in that they do not necessarily, or even by implication, go to the innocence of the party being detained. As such, it is suggested, a more limited habeas review is in order, going only to the issue of fair opportunity to present the claim in the criminal process. Developed argument has emerged in the past few years supporting this position. See Schneckloth v. Bustamonte, 412 U.S. 218, 250, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (Powell, J., concurring); Kaufman v. United States, 394 U.S. 217, 231, 89 S.Ct. 1068, 22 L. Ed.2d 227 (1969) (Black, J., dissent-

---

1. Respondent cites the Court to Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), which, in announcing the incorporation of the exclusionary rule regarding Fourth Amendment searches into the due process clause of the Fourteenth Amendment, states at 659, n. 9, 81 S.Ct. at 1693: "As is always the case, however, state procedural requirements governing assertion and pursuance of direct and collateral constitutional challenges to criminal prosecutions must be respected." It is not clear that this was ever intended to refer to state power to bar federal collateral challenges.

In any event, to the extent that state procedures purport to block federal habeas inquiry into unconstitutional detention, any such deference was disapproved two years later in Fay v. Noia.

2. In passing, it might be noted that Congress has apparently not seen fit to extend preclusive effect to the failure to raise Fourth Amendment claims prior to trial in the federal system. See Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969). See also, Professor Bines' article in 59 Va.Law Review 927 (1973).

ing); Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U.Chicago L.Rev. 142 (1970). That, however, is not the law with regard to state prisoners. As stated in Kaufman v. United States, 394 U.S. 217, 225, 89 S.Ct. 1068, 1073, 22 L.Ed. 2d 227 (1969):

> [The rejection of this approach is] premised in large part on a recognition that the availability of collateral remedies is necessary to insure the integrity of proceedings at and before trial where constitutional rights are at stake. Our decisions leave no doubt that the federal habeas corpus remedy extends to state prisoners alleging that unconstitutionally obtained evidence was admitted against them at trial. See, e. g., Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); see also, Henry v. Mississippi, 379 U.S. 443, 452, 85 S.Ct. 564, 570, 13 L.Ed.2d 408 (1965).

The Court in *Kaufman* went on to reject the argument of more limited review as it applied to federal prisoners. For the above reasons, this Court concludes that it is appropriate to reach the merits of petitioners' contention.

■ It is well established that the proof offered by affidavit to support a search warrant must be "of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." Sgro v. United States, 287 U.S. 206, 210, 53 S. Ct. 138, 140, 77 L.Ed. 260 (1932). This rule, like all constitutional requirements, must be interpreted in a common-sense and realistic fashion. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

What remained of the affidavits supporting the warrant after judicial surgery by the Virginia Supreme Court has been set out above. It is to be recognized that the statement in the affidavit is that of the affiant, not the informant. There are no quotation marks or other indications that any of the specific words or phrases used are attributable to the informant.

■ As stated by Mr. Justice Fortas, a policeman's affidavit "should not be judged as an entry in an essay contest." Spinelli v. United States, 393 U.S. 410, 438, 89 S.Ct. 584, 600, 21 L.Ed.2d 637 (1969) (Fortas, J., dissenting). It is entitled to a common-sense evaluation of what it was the affiant was endeavoring to say. Here the affiant stated that his informant spoke of persons "known by her to frequent" the premises. While the basis of the information was the informant's knowledge, the phrase "known by her to frequent" is the affiant's. It describes the informant's present knowledge of the ongoing activity denoted by the verb "to frequent." As used by the affiant, it describes the informant's state of mind at the time of the affidavit. A similar reading of the affiant's rendition of what his informant was told, that the persons described "frequent such premises" and that drugs "are there unlawfully possessed" indicates communications to the informant which would continue to be operative at the time of the attestation.

The affiant did not indicate, nor was it necessary that he do so, precisely what terminology his informant used or under precisely what circumstances she spoke in order to relate to him knowledge of an enterprise which would be continuing at the time of the request for the warrant. The impression given by the statement here in question, however, is that the informant described an activity known to her to be ongoing at the time of her speaking and that that time was sufficiently proximate to the time of the warrant request for the affiant to attest that he had been told that it was still in process. See Rosencranz v. United States, 356 F.2d 310 (1st Cir. 1966), to the contra. See also, United States v.

Unger, 469 F.2d 1283 (7th Cir. 1972), rehearing denied Jan. 1973.

Giving due weight to the preference accorded to the magistrate's finding in doubtful or marginal cases, see United States v. Ventresca, *supra,* the Court finds that the segment of the affidavit in question would warrant the belief in a man of reasonable caution that the evidence sought was on the premises at the time of the request for the warrant and further finds that the warrant was validly issued.

Since the Court finds the warrant validly issued on that portion of the third affidavit which was also approved by the Virginia Supreme Court, it does not reach the question of the sufficiency of the affidavits which the Virginia Supreme Court found inadequate.

For the reasons stated above, the respondent's motion for summary judgment shall be granted and the petition dismissed.

An appropriate order shall issue.