**STATE of Iowa, Plaintiff-Appellee,**

v.

**William Malcolm BARGER,
Defendant-Appellant.**

No. 85–87.

Court of Appeals of Iowa.

Jan. 29, 1986.

Thomas J. Miller, Atty. Gen., Valencia Voyd McCown, Asst. Atty. Gen., Stephen J. Petersen, Co. Atty., and Bruce Ingham, Asst. Co. Atty., for plaintiff-appellee.

Charles L. Harrington, Appellate Defender, and Linda Del Gallo, Asst. Appellate Defender, for defendant-appellant.

Heard by SNELL, P.J., and OXBERGER and SCHLEGEL, JJ.

SNELL, Presiding Judge.

On July 9, 1984, the defendant's wife, Della Barger, reported to the Muscatine police department that defendant was carrying a stolen twelve-gauge shotgun behind the driver's seat of his pickup truck. The Muscatine police department notified the police department in West Liberty of this information and defendant's address. A surveillance, involving four vehicles and eight police officers, was set up near defendant's home. Defendant left his home at approximately 11:20 p.m. on the evening of July 9, drove less than a block from his home and was stopped by one of the police vehicles, allegedly for failing to use his turn signal at a corner. The shotgun was discovered behind the driver's seat and seized. Defendant was arrested.

On July 10, 1984, the magistrate issued a search warrant for defendant's residence on further information from Della Barger. The application for the search warrant stated as follows:

I have reliable information supplied to me by the same informant, who advised that he, Wm. Barger, had a stolen gun in his possession. The additional information supplied is that he has stored in his place of dwelling more blasting caps, timing devices, another stolen shotgun, along with chemicals used to make explosives.

\* \* \* \* \* \*

Informant stated that she has seen all the items being sought stored within his residence, and to the best of her knowledge still believes these items to still be there at this residence.

\* \* \* \* \* \*

Informant stated that she knew that William Barger had in his possession, a stolen shotgun stored behind his seat of his pickup. When subject was stopped and the vehicle checked the shotgun was located behind the seat and a check on the firearm with NCIC came back as stolen from Atalissa, Iowa.

\* \* \* \* \* \*

Informant came into station on 7–10–84 and provided further information that Wm. Barger has stored in his residence, blasting caps, timing devices, another stolen shotgun, along with chemicals (Potasium Cloride) to make explosives.

\* \* \* \* \* \*

On 7–9–84 Informant gave information that a William Barger had in his possession within his pickup truck a stolen shotgun. When vehicle was checked out information provided was true.... Facts provided on 7–9–84 were positive and true.

The magistrate's abstract of testimony also made specific reference to the July 9 stop. This search warrant was executed on July 10 and various electric equipment, powders, safety fuses, blasting caps, and a silencer were found in one room of the house and seized. Firearms and ammunition were also discovered but not confiscated. After follow-up investigation, the police discovered that defendant was a convicted felon. Another search warrant for defendant's residence was issued and executed on July 13, 1984, and various firearms and ammunition were seized at that time.

Defendant filed a motion to suppress any evidence seized without a warrant from defendant's vehicle on July 9, 1984, and any evidence seized from defendant's home on July 10 and July 13, 1984. Following the suppression hearing, the trial court ruled that the July 9 traffic stop was "a

ruse for stopping the defendant and looking for the gun." The shotgun seized during this illegal stop was suppressed. However, the trial court found that the evidence obtained during the July 10 and July 13 searches of defendant's home should not be suppressed because under the totality of the circumstances probable cause existed for issuance of the search warrants. The court further concluded that even though the magistrate's abstract of testimony indicated that he relied upon the information obtained by the illegal stop of July 9th, the exclusionary rule did not bar the use of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate. As a result of the court's ruling on the motion to suppress, an amended trial information was filed charging defendant with three counts—unlawful possession of explosives, possession of offensive weapons, and possession of a firearm by a felon.

After trial, the jury returned verdicts finding defendant guilty as charged. On appeal, defendant asserts that the magistrate relied upon information obtained from the invalid stop of defendant's vehicle to issue the search warrants for defendant's home. Therefore, all evidence seized in the searches of defendant's home is tainted by the illegal stop and must be suppressed.

■■■ The validity of a search warrant is tested by well established principles. A warrant may only be issued upon a finding of probable cause. *State v. Post*, 286 N.W.2d 195, 199 (Iowa 1979). The standard for issuing a search warrant is

> whether a person of reasonable prudence would believe a crime was being committed on the premises to be searched or evidence of a crime was being concealed there.... The facts must establish probable cause that the crime or evidence is presently being committed or concealed at the place to be searched and cannot merely establish that there was probable cause at some time in the past.

*Id.* at 196. Only the facts presented to the magistrate when the warrant was issued are considered on review. *State v. Drake*,

224 N.W.2d 476, 478 (Iowa 1974). The fourth amendment does not deny the Information for Search Warrant the support of the usual inferences which reasonable men draw. *State v. Seiler*, 342 N.W.2d 264, 267 (Iowa 1983).

■■■ The United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527, 543 (1983), established that when probable cause is based on information provided by an informant, the "totality-of-circumstances" relayed in an affidavit must give rise to probable cause. While acknowledging that an informant's veracity, reliability, and basis of knowledge are highly relevant in determining the value of his report, the Court found that these elements are not "entirely separate and independent requirements to be rigidly exacted in every case.... Rather ... they should be understood simply as closely intertwined issues that may usefully illuminate the common sense, practical question whether there is "probable cause" to believe that ... evidence is located in a particular place." *Id.*

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of crime will be found in a particular place.

*Id.* at 238–39, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. There is a preference for warrants and we construe them in a commonsense manner, resolving doubtful cases in favor of their validity. *State v. Hennon*, 314 N.W.2d 405, 407 (Iowa 1983). We make an independent evaluation of the totality of the circumstances. *State v. Ahart*, 324 N.W.2d 317, 318 (Iowa 1982). However, our review is only to determine whether there is a substantial basis for concluding that probable cause existed. *State v. Luter*, 346 N.W.2d 802, 807 (Iowa 1984).

Defendant asserts that any information regarding the illegal stop of his vehicle on July 9 cannot be considered in evaluating if

probable cause existed to support the July 10 or July 13 search warrants because the warrants were "fruits" of the illegal stop.

The search warrants issued for defendant's home were based on information provided by the informant on July 10. On July 10, the informant told the police officer who made application for the search warrant that she had personally observed various explosive materials and firearms at defendant's residence. She specifically identified the items and indicated that to the best of her knowledge they were still located where she had observed them. Nothing that the police officers discovered during the illegal stop of defendant's vehicle on July 9 led them to believe that explosives and firearms existed at defendant's home.

 The reference to the July 9 stop in the Application for Search Warrant was made solely to give some indication of the informant's reliability. Under *Gates,* the informant's veracity is one factor to be considered in making a "totality of the circumstances" determination of probable cause. The veracity of the informant may be shown by demonstrating that the "informant had not given false information in the past." *Hennon,* 314 N.W.2d at 408; 1 W. LaFave, *Search and Seizure* § 3.3 at 508–11 (1978). It is not necessary that arrests or convictions have resulted from information supplied by the informant previously. *Hennon,* 314 N.W.2d at 407; *State v. Moehlis,* 250 N.W.2d 42, 45 (Iowa 1977). Rather, the information the informant provided in the past "may relate to prosecutions dismissed for reasons unrelated to the reliability of the informant's information." *LaFave* § 3.3 at 510 (quoting *People v. Arnold,* 186 Colo. 372, 527 P.2d 806 (1974). Furthermore, where the critical allegation is that the informant's prior information has led to the discovery of evidence of criminal activity,

> courts have consistently held that an informant's track record is sufficiently established by showing (i) that on one or more prior occasions the informant indicated that a certain object, usually narcotics but sometimes such other items as stolen property or even the body of a homicide victim, are concealed at a certain place, and (ii) that this information was verified as true by a search which uncovered the specified items at the place indicated. This is a sound result, for the fact that "evidence was turned up which the informant indicated would be turned up" bears very directly upon the informant's credibility. Indeed, as a general proposition such a showing may be more convincing than an assertion that the informer's prior information "led" to convictions. . . .

*LaFave* § 3.3 at 511.

In the case at bar, regardless of the validity of the July 9 stop, the fact remains that the previous information supplied by the informant was accurate. A stolen shotgun was discovered in defendant's truck precisely where the informant indicated that it would be found. This fact was supplied to the magistrate as representative of the informant's reliability.

 We conclude that the magistrate properly considered the accuracy of the informant's previous information and that there was a substantial basis for determining that probable cause existed to issue the July 10 search warrant. Because the July 10 warrant was valid, and the July 13 warrant was based on observations during the July 10 search, the July 13 warrant is also supportable by probable cause.

AFFIRMED.